UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL SPANO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Case No. 6:16-cv-06419-EAW

V&J NATIONAL ENTERPRISES, LLC,
V&J UNITED ENTERPRISES, LLC, and
V&J HOLDING COMPANIES, INC.,

Defendants.

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO FILE SUPPLEMENTAL DECLARATION**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 3

I. Defendants Breached The Arbitration Agreement, Rendering It Unenforceable .......... 3

II. Defendants Purported Excuses For Their Breach Are Without Merit .......... 4

A. Defendants Were On Notice Of Their Obligation To Pay .......... 4

B. Defendants' Failure To Timely Pay The AAA Is Not Excused By Defendants' Incorrect Assertion That The AAA Charged Too Much .......... 6

C. Defendants' Failure To Pay Constitutes A Material Breach .......... 7

III. Defendants' Breach Constitutes A Waiver Of Their Rights To Compel Arbitration .......... 8

IV. Defendants' Breach Of The Arbitration Agreement Raises A Fact-Intensive Dispute Over The Enforceability Of That Agreement .......... 9

CONCLUSION .......... 14

**TABLE OF AUTHORITIES**

**Cases**

*Bellman v. i3Carbon, LLC*,
563 Fed. Appx. 608 (10th Cir. 2014) .......... 10

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) .......... 10

*Brown v. Dillard's Inc.*,
430 F.3d 1004 (9th Cir. 2005) .......... 4, 8, 9

*Carthage Cent. School Dist. v. Reddick & Sons of Gouverneur, Inc.*,
434 N.Y.S. 2d 533 (4th Dep't 1980) .......... 9

*D._Klein & Son, Inc. v. Good Decision, Inc*.,
147 Fed. Appx. 195 (2d Cir. 2005) .......... 5

*Doctor's Assocs., Inc. v. Distajo*,
66 F.3d 438 (2d Cir. 1995) .......... 8

*Dreyfus v. eTelecare Global Solutions-US, Inc*.,
No. 08-1115, 2008 WL 4974864 (S.D.N.Y. Nov. 19, 2008) .......... 10

*Growtech Partners v. Accenture LLP*,
118 F. Supp. 3d 920 (S.D. Tex. 2015) .......... 9

*In re Crysen/Montenay Energy Co*.,
226 F.3d 160 (2d Cir. 2000) .......... 9

*In re Lavigne*,
114 F.3d 379 (2d Cir. 1997) .......... 7

*In Re Tyco Int'l Ltd. Sec. Litig*,
422 F.3d 41 (1st Cir. 2005) .......... 9

*Lane, Ltd. v. Larus & Brother Co*.,
243 F.2d 364 (2d Cir. 1957) .......... 8

*Nadeau v. Equity Residential Props. Mgmt. Corp*.,
No. 16-7986, 2017 WL 1842686 (S.D.N.Y. May 5, 2017) .......... Passim

*Nagy v. Arcas Brass & Iron Co.*,
242 N.Y. 97 (1926) .......... 8

*Russell v. Mimeo, Inc.*,
No. 08-5354, 2008 WL 6559743 (S.D.N.Y. Oct. 29, 2008) .................... 10

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
310 F.3d 102 (2d Cir. 2002) .................... 9

*Zhang v. Wang*,
317 F. App'x 26 (2d Cir. 2008) .................... 8

**PRELIMINARY STATEMENT**

Defendants V&J National Enterprises, LLC, V&J United Enterprises, LLC, and V&J Holding Companies, Inc. (collectively, "Defendants" or "V&J") breached their own arbitration agreement and waived their right to compel arbitration. Indeed, a recent decision by Judge Briccetti in *Nadeau v. Equity Residential Props. Mgmt. Corp.*, No. 16-7986, 2017 WL 1842686 (S.D.N.Y. May 5, 2017) ("*Equity*") is squarely on all fours.[1] In *Equity*, the court found that a defendant-employer had materially breached its arbitration agreement and could not compel arbitration because the defendant-employer failed to pay the American Arbitration Association ("AAA") fee until after the AAA closed the arbitration, despite the defendant-employer's paying the AAA shortly after the plaintiff informed the court of the breach.

Defendants' labored attempts to justify or excuse their breach are unavailing. Defendants were clearly on notice of the arbitration proceeding that Plaintiff initiated, as they themselves submitted the arbitration demand as an exhibit in this matter. Therefore, any alleged inaccuracies in filing the demand (which Plaintiff disputes) amount to the same type of immaterial "technical deficiencies" that the *Equity* court considered and rejected as a justification for an employer's refusal to arbitrate. Likewise, Defendants' argument that the AAA requested the wrong amount for the requisite fee -- an issue they could have raised with the AAA at any time (and an issue about which Defendants are wrong) -- does not excuse V&J's complete non-participation in the proceedings. To the contrary, Defendants' failure to timely pay the bill that was properly submitted by the AAA underscores that Defendants have likely never arbitrated with one of their employees and have no intention of arbitrating in good faith.

[1] The *Equity* decision had not been issued when Plaintiff filed the supplemental declaration, and the Defendants have already briefed the applicability of *Equity* to this issue (*see Beebe v. V&J National Enterprises, LLC*, No. 17-6075, Dkt. No. 32 (W.D.N.Y. May 23, 2017)), so Defendants should not be heard to complain about Plaintiff's citation to *Equity* on Reply.

Courts have consistently held that a defendant-employer's failure to participate in arbitration proceedings initiated by a plaintiff-employee constitutes a both a breach and a waiver of the defendant-employer's arbitration agreement. This should be especially true in this case, where the Parties have been filing papers in this Court action for nearly a year only because V&J refused Plaintiff's offer to stipulate to dismiss his court case and failed to participate in Plaintiff's individual arbitration.

At the very least, Defendants' failure to arbitrate raises fact-intensive issues on the merits regarding the enforceability of the arbitration agreement. When deciding these fact issues, the Court must make all inferences in Plaintiff's favor, which further militates in favor of denying Defendant's motion to compel arbitration and striking Defendants' arbitration counterclaim.

## ARGUMENT

### I. Defendants Breached The Arbitration Agreement, Rendering It Unenforceable.

V&J's motion to compel arbitration under an agreement it breached should be denied, and its counterclaim based on that agreement should be dismissed. As Judge Briccetti found under materially identical facts, an employer's repeated failure to participate in arbitration proceedings before the AAA by paying its requisite fee is a material breach of the arbitration agreement, precluding the employer from basing a motion to compel on that same agreement. *Equity*, 2017 WL 1842686 at *3. As with V&J, the *Equity* defendant reversed its position, agreeing to pay the fee and proceed with arbitration, only after the plaintiff informed the court of the employer's breach. *See* Defendant's Reply Memorandum of Law in Support of Defendant's Motion to Compel Arbitration, *Nadeau v. Equity Residential Props. Mgmt. Corp.*, No. 16-7986, Dkt. No. 29, at 8 (S.D.N.Y. Jan. 6, 2017) (arguing that Equity could still enforce the arbitration agreement because "the AAA reopened [the] arbitration" in a subsequent communication sent when Equity paid the fee). However, Judge Briccetti correctly held that a defendant-employer

could not belatedly cure its material breach by paying the AAA after the AAA closed the arbitration due to non-payment and the plaintiff so informed the court. *See Equity*, 2017 WL 1842686 at *3. The same result is appropriate here.

Defendants' actions mirror the facts in *Equity* in all material respects. V&J repeatedly refused to pay the required fee, and, as a result, the AAA closed the action with prejudice. *See* Supplemental Declaration of Jeremiah Frei-Pearson, Dkt. No. 41-1, ("Frei-Pearson Decl.") ¶¶ 10-14. Indeed, after months of non-payment the AAA sent both the *Equity* defendant and V&J <u>identical</u> letters terminating arbitration due to the employer's non-payment and "declin[ing] to administer any future employment matter involving [the employer]." *See* Dkt. No. 41-9 (letter from the AAA declining to administer employment matters involving V&J); *Nadeau v. Equity Residential Props. Mgmt. Corp.*, No. 16-7986, Dkt. No. 27-5 (S.D.N.Y. Dec. 21, 2016) (letter from the AAA declining to administer employment matters involving Equity).

Also just as in *Equity*, Defendants ultimately agreed to pay the required fee, but only after Plaintiff informed the Court that the AAA had closed arbitration proceedings as a result of Defendants' breach. *See* Dkt. No. 47 at 4 (stating that payment was made to the AAA on April 10, 2017, more than two months after it was originally due). In both cases, the AAA responded to the delinquent payment by issuing notices offering to reopen the arbitration. *See id*. (arguing that V&J could still enforce the arbitration agreement because of a subsequent email issued by the AAA "indicating that the arbitration could proceed"); Defendant's Reply Memorandum of Law in Support of Defendant's Motion to Compel Arbitration, *Nadeau v. Equity Residential Props. Mgmt. Corp.*, No. 16-7986, Dkt. No. 29, at 8 (S.D.N.Y. Jan. 6, 2017) (arguing that Equity could still enforce the arbitration agreement because "the AAA reopened [the] arbitration" in a subsequent communication sent when Equity paid the fee).

Nonetheless, as Judge Briccetti held in *Equity*, a defendant-employer's belated change of heart and untimely payment could not cure its breach; by failing to timely pay the AAA, the "defendant materially breached the Arbitration Agreement and therefore cannot use the Agreement to compel arbitration." *Equity*, 2017 WL 1842686, at *3.

> To hold otherwise "would set up a perverse incentive scheme," contrary to the FAA and common sense: "Employers like [defendant] would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. [The Court] decline[s] to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings."

*Id.* (quoting *Brown v. Dillard's Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005); alterations in original).[2]

## II. Defendants' Purported Excuses For Their Breach Are Without Merit.

### A. Defendants Were On Notice Of Their Obligation To Pay.

Despite their protestations that the AAA's fee requests were only directed to V&J Holding Companies, Inc. and V&J National Enterprises, LLC, Defendants were plainly aware that Plaintiff had initiated arbitration proceedings against them.[3] Indeed, Defendants submitted a

---

[2] Defendants claim that this risk of a "perverse incentive scheme" is inapplicable because Plaintiff filed his action prior to initiating arbitration. Not so. Defendants' counterclaim explicitly requested that the Court dismiss this action and grant an award of attorneys' fees based on the arbitration agreement. Dkt. No. 10 at 19. As described in *Brown* and *Equity*, this clearly poses a risk that "frustrated employees would simply abandon [their claims]" prior to V&J ever actually participating in arbitration. *Equity*, 2017 WL 1842686 at 3 (quoting *Brown*, 430 F.3d at 1012). Under either order of events, if an employer is able to materially breach an arbitration agreement, but still use that agreement to foreclose litigation, the perverse incentive would remain. Thus, "when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration." *Id.* (quoting *Brown*, 430 F.3d at 1012).

[3] Thus any alleged "non-compliance with the applicable AAA rules" by Mr. Spano at the initiation of the arbitration proceedings amounts to nothing more than the same sort of immaterial "technical deficiencies" that the *Equity* court considered and rejected as a defense to

complete copy of Plaintiffs' arbitration submission in connection with this case less than one week after it was submitted to the AAA. Dkt. No. 35-1.

Although Defendants claim that "AAA never sent any letters to V&J Employment -- the only entity with any payment obligation under the Agreement -- or V&J United" (Dkt. No. 47 at 7), V&J Employment Services, Inc.'s mailing address is the same as V&J Holding Companies, Inc.'s: 6933 W. Brown Deer Rd., Milwaukee, Wisconsin, the address where all of the AAA's letters were mailed. *See* Exhibits 1-4 to Reply Declaration of Jeremiah Frei-Pearson ("Reply Decl.") (Wisconsin corporate registration information for V&J Employment Services, Inc. and each named Defendant, indicating that each entity's principal office is at 6933 W. Brown Deer Rd., Milwaukee, Wisconsin); Dkt. Nos. Dkt. No. 41-5, 41-6 (Fee request letters from the AAA sent to that same address). This same address is also where the respective Complaints were served on both V&J National Enterprises, LLC and V&J United Enterprises, LLC in both this action and the *Beebe* case. *See* Dkt. Nos. 4, 5; *Beebe v. V&J National Enterprises, LLC*, No. 17-6075, Dkt. Nos. 11, 12 (W.D.N.Y. Mar. 8, 2017). Likewise, V&J Employment Services, Inc. appears to use the very same fax number to which the AAA sent multiple fee demands.[4] *See*

---

the employer's failure to arbitrate. *See Equity*, 2017 WL 1842686 at *4 ("[T]he [Arbitration] Demand triggered defendant's obligation to arbitrate despite any technical deficiencies contained therein, and therefore defendant breached the Arbitration Agreement by its refusal to arbitrate."). As in *Equity*, "[p]erhaps most importantly, the AAA deemed the Demand adequate to initiate an arbitration" and Defendants have made no showing why the Court "should hold plaintiff's Demand to a higher standard than that used by the AAA." *Id.*

[4] V&J Employment Services, Inc. appears to be a corporate alter ego of Defendants, and as such Defendants cannot hide behind the corporate fiction that "Defendants have no legal obligation to pay the arbitration filing fees [because] V&J Employment is the only entity obligated to pay the arbitration filing fees under the [Arbitration] Agreement." Dkt. No. 47 at 9. *See D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. Appx. 195, 197 (2d Cir. 2005) (holding separate corporations to be alter egos of one another where "common owners have so dominated that the entities have operated, at least with respect to [plaintiff], as a single enterprise").

Exhibit 5 to Reply Decl. (listing V&J Employment Services, Inc.'s fax number as 414-365-9467); Dkt. Nos. 41-7, 41-8 (AAA fee demand letters faxed to (414)365-9467).

**B. Defendants' Failure To Timely Pay The AAA Is Not Excused By Defendants' Incorrect Assertion That The AAA Charged Too Much.**

Defendants' argument that they should be excused from their non-payment because the AAA requested a fee that was $200 too high is not well taken.[5] If the AAA truly made an error, Defendants should have raised the issue with the AAA instead of simply refusing to pay for months. *See* Dkt. No. 47-2 at 32 ("If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination."). There is no evidence that Defendants tried to resolve this issue with the AAA. To the contrary, Defendants simply refused to pay the AAA until after Plaintiffs informed the Court of Defendants' failure to pay. This is the same fact pattern that the *Equity* court held renders an employer's arbitration agreement unenforceable. *See Equity*, 2017 WL 1842686, at *2-3.

However, the AAA did not make an error. The AAA Rules provide that for arbitration actions that, like Plaintiff's, are initiated by an employee against an employer (where the action would be before a single arbitrator), "a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A non-refundable fee in the amount of $1,500 is payable in full by the employer, unless the plan provides that the employer pay more." Dkt. No. 47-2 at 33 (emphasis added). The language of the AAA Rules -- which are expressly incorporated in the arbitration agreement (*see* Dkt. No. 10-1 at 1) -- indicates that the AAA would review the applicable arbitration

[5] Tellingly, although V&J has pointed to this fee discrepancy in both this matter and the related *Beebe* action (*see Beebe v. V&J National Enterprises, LLC*, No. 17-6075, Dkt. No. 32 at 7 (W.D.N.Y. May 23, 2017)), it has never actually claimed in its briefings that this discrepancy in any way motivated its refusal to pay nor submitted any declarations to that effect.

agreement and determine the appropriate fee. *See* Dkt. No. 47-2 at 33. Here, the AAA reviewed the arbitration agreement and correctly determined that Plaintiff had to timely pay $200 (which he did) and V&J had to timely pay $1,500 (which it did not). V&J's claim that it should only pay $1,300 is directly contrary to the AAA Rules and likely reflects that it would ignore AAA rules and systematically delay any arbitration proceeding.

### C. Defendants' Failure To Pay Constitutes A Material Breach.

As the Judge Briccetti held in *Equity*, a "refusal to arbitrate" through failing to pay the AAA's required arbitration fee "constitutes a material breach of the Arbitration Agreement, and therefore [D]efendant cannot compel arbitration." *Equity*, 2017 WL 1842686 at *5. Despite Defendants' claims to the contrary, V&J's arbitration agreement contains a time of essence element. Indeed, performance without delay is required by the first sentence of the arbitration agreement, which states that it the parties agree to arbitrate to avoid "the delay and expense of the Court system." Dkt. No. 10-1 at 1. Rather than abide by their obligations under the agreement, Defendants (1) refused Plaintiff's offer to stipulate to dismiss this case and arbitrate on an individual basis (*see* Dkt. No. 23-2 at ¶¶ 4-6); (2) refused to pay the AAA, ignoring multiple communications from the AAA (*see* Frei-Pearson Decl. at ¶¶ 10-14); and (3) opposed Plaintiff's attempt to voluntarily dismiss this case (*see* Dkt. No. 36). This is the exact opposite of seeking to avoid the delay and expense of the Court system. *See, e.g., Equity*, 2017 WL 1842686 at *3 ("A breach is material when it 'substantially defeats the purpose of that contract.'") (quoting *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)).

Moreover, Defendants did not, as they claim, "[pay] the employer's portion of the arbitration filing fee [] two business days after the deadline set by AAA." Dkt. No. 47 at 8. Defendant paid the employer's portion of the filing fee a full two months after the February 7, 2017 deadline initially set by AAA. *See* Dkt. No. 41-5. The AAA repeatedly extended

Defendants' deadline -- first to February 23 (*see* Dkt. No. 41-6), then to March 13 (*see* Dkt. No. 41-7), and finally to April 6 (*see* Dkt. No. 41-8) -- because of their failure to pay their portion of the filing fee. In each letter that extended this deadline, the AAA expressly warned Defendants that it "may decline to administer future cases involving the employer" if Defendants failed to pay. Dkt. Nos. 41-6, 41-7, 41-8. When Defendants once again failed to meet the deadline after three extensions, the AAA, as it had warned Defendants, terminated the action and closed the case. Dkt. No. 41-9. Defendants only paid the AAA after Plaintiff informed this Court that the AAA closed the arbitration. *See* Dkt. No. 41.

## III. Defendants' Breach Constitutes A Waiver Of Their Rights To Compel Arbitration.

"Like contract rights generally, a right to arbitration may be modified, waived or abandoned. A refusal by a party to arbitrate upon demand duly made by the other side constitutes such a waiver." *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008) (internal citations, quotations, and alterations omitted); *see also Nagy v. Arcas Brass & Iron Co.*, 242 N.Y. 97, 98 (1926) (per curiam). When determining arbitrability, the Federal Arbitration Act requires a court to determine whether an arbitration agreement has been waived and is thereby unenforceable. *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995) (describing the waiver defense as a "statutorily mandated inquiry").

As in *Equity*, Plaintiff's arbitration demand "triggered defendant's obligation to arbitrate" (*Equity*, 2017 WL 1842686 at *4), yet Defendant nonetheless "refused to participate in the arbitration process at all." *Id.* (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005)). Courts routinely hold that such refusal to participate in arbitration constitutes waiver of the right to demand arbitration. *See, e.g., Lane, Ltd. v. Larus & Brother Co*., 243 F.2d 364, 367 (2d Cir. 1957) ("A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has

been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."); *Brown*, 430 F.3d at 1012-13 (holding that employer's failure to pay fees demanded by the arbitral authority "easily satisf[ies]" any obligation by the employee to demonstrate that the defendant employer was aware of its right to arbitrate and had acted inconsistently with that right); *Growtech Partners v. Accenture LLP*, 118 F. Supp. 3d 920, 946 (S.D. Tex. 2015) (finding that a party that failed to participate in arbitration waived its right to compel a court action into arbitration).

Having failed to timely participate in the arbitration process, Defendants have waived their right to demand arbitration in this matter. *See, e.g.*, *In Re Tyco Int'l Ltd. Sec. Litig*, 422 F.3d 41, 46-47 (1st Cir. 2005) (holding that a party that fails to participate in arbitration cannot subsequently compel arbitration and that "[j]udicial condonation of such deliberate gamesmanship directly conflicts with the oft-cited principle that arbitration is not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process.") (citation and quotation omitted).[6]

**IV. Defendants' Breach Of The Arbitration Agreement Raises A Fact-Intensive Dispute Over The Enforceability Of That Agreement.**

Defendants' breach of the agreement presents merits-based issues that cannot be decided in Defendants' favor at this stage. As the Tenth Circuit explained, "the party moving to compel

[6] The cases cited by Defendants, *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000), *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002), and *Carthage Cent. School Dist. v. Reddick & Sons of Gouverneur, Inc.*, 434 N.Y.S. 2d 533 (4th Dep't 1980) are all inapposite because they concerned whether a party had waived the right to arbitration by participating in litigation over the same or related issues. Where, as here, a party has waived by breaching the arbitration agreement through refusing to arbitrate, a different analysis is often required. *See, e.g.*, *Equity*, 2017 WL 1842686. Nonetheless, Plaintiff has suffered prejudice through the delay caused by Defendants' gamesmanship, as described *supra* 6-7. *See In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d at 46 (finding prejudice where party engaged in "a deliberate strategy unilaterally designed to delay the arbitration proceedings" through non-participation).

arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact." *Bellman v. i3Carbon, LLC*, 563 Fed. Appx. 608, 612 (10th Cir. 2014) (citations omitted); *see, e.g.*, *Russell v. Mimeo, Inc.*, No. 08-5354, 2008 WL 6559743, at *1 (S.D.N.Y. Oct. 29, 2008); *Dreyfus v. eTelecare Global Solutions-US, Inc.*, No. 08-1115, 2008 WL 4974864, at *2 (S.D.N.Y. Nov. 19, 2008). "In ascertaining whether questions of material fact remain, we give the nonmoving party 'the benefit of all reasonable doubts and inferences that may arise.'" *Bellman*, 563 Fed. Appx. at 612 (citations omitted); *see, e.g.*, *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (recognizing that questions of arbitrability are decided under "a standard similar to that applicable for a motion for summary judgment."). Here, the merits-based disputes caused by Defendants' breach simply cannot be resolved in Defendants' favor before discovery has even begun.[7]

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Leave to File a Supplemental Declaration and its associated exhibits, dismiss Defendants' Counterclaim, and deny Defendants' Motion to Compel.

---

[7] To date, Defendants have submitted little factual evidence indicating that it will arbitrate. Plaintiff's Counsel have filed discovery requests in a related matter in order to obtain evidence indicating that Defendants have never arbitrated with an employee and do not intend to properly arbitrate with Mr. Spano. Reply Decl. at ¶ 5. However, Plaintiff is unable to take discovery in this matter because Defendants have refused to participate in a Rule 26 conference. *Id.* at ¶ 4. This discovery is especially important because, if the Court ordered Plaintiff to arbitrate, Defendants could -- and almost certainly would -- once again delay the arbitration by failing to timely pay the next bill the AAA issues them. *See* Dkt. No. 47-2 at 31 (stating that the AAA may "suspend or terminate [arbitration] proceedings" for non-payment.).

Dated: June 12, 2017
White Plains, New York

Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By: *  /s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson (WDNY No. 4232922)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com

*Attorneys for Plaintiff and the Putative Class*