UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL SPANO,

                    Plaintiff,

        v.

V & J NATIONAL ENTERPRISES, LLC,
V & J UNITED ENTERPRISES, LLC, and
V & J HOLDING COMPANIES, INC.

                    Defendants,

_____

V & J NATIONAL ENTERPRISES, LLC,
V & J UNITED ENTERPRISES, LLC, and
V & J HOLDING COMPANIES, INC.

                    Plaintiffs,

        v.

DANIEL SPANO,

                    Defendant.

_____

**DECISION AND ORDER**

16-CV-06419-EAW-MWP

## **INTRODUCTION**

Plaintiff Daniel Spano ("Plaintiff") brings this putative class action lawsuit against V & J National Enterprises, LLC ("V&J National"), V & J United Enterprises, LLC ("V&J United"), and V & J Holding Companies, Inc. ("V&J Holding") (collectively, "Defendants"), for damages allegedly sustained as a result of Defendants' illicit wage practices. (Dkt. 1). Defendants have filed a counterclaim against Plaintiff seeking declaratory relief in the form of an order requiring that Plaintiff's claims be resolved

- 1 -

through arbitration pursuant to an Arbitration and Collective/Class Waiver Agreement (the "Agreement"). (Dkt. 10). Presently before the Court is Plaintiff's motion to dismiss Defendants' counterclaim for lack of subject matter jurisdiction and stay of the action pending an investigation by the National Labor Relations Board ("NLRB") (Dkt. 15); Defendants' motion to compel individual arbitration, stay this action, and strike all class/collective actions from the complaint (Dkt. 17); and Plaintiff's motion for leave to file a supplemental declaration (Dkt. 41).

For the reasons set forth below, Plaintiff's motion for leave to file a supplemental declaration (Dkt. 41) is **GRANTED**; Defendants' motion to compel arbitration and stay this action pending arbitration (Dkt. 17) is **DENIED**; Plaintiff's motion to dismiss based upon lack of subject matter jurisdiction (Dkt. 15) is **DENIED**; Plaintiff's motion to stay this action pending the resolution of the NLRB investigation (Dkt. 15) is **DENIED**; and this action (along with Defendant's pending motion to strike (Dkt. 17)), is **STAYED** pending the resolution of the Supreme Court's decision in the consolidated cases of *Ernst & Young, LLP v. Morris*, 137 S. Ct. 809 (2017), *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017), and *NLRB v. Murphy Oil USA, Inc.*, 137 S. Ct. 809 (2017).

## BACKGROUND

Plaintiff was an employee of V & J Employment Services, Inc. ("V&J Employment")—a non-party to this action—where he worked as a pizza delivery driver for a Pizza Hut restaurant operated by Defendants. (*See* Dkt. 1 at ¶¶ 10, 15). Plaintiff makes various allegations concerning Defendants' wage practices and on-the-job reimbursements. (*Id.* at 6-8). Specifically, Plaintiff claims that Defendants did not pay

him, or other similarly situated delivery truck drivers, a fair share of reimbursements

pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"),

and the New York Labor Law, N.Y. Lab. Law Art. 19 ("NYLL"), and seeks damages

arising from these violations. (Dkt. 1).

Prior to the commencement of this action, on November 6, 2015, Plaintiff

executed the Agreement which requires "confidential binding arbitration":

> for any claims, including any claims now in existence or that may exist in
> the future that (a) [Plaintiff] might have against [V&J Employment], its
> predecessors, affiliates, parents, subsidiaries, related business entities,
> franchisors, successors, assigns, and all of their current, former, and retired
> officers, directors, principals, shareholders, owners, members, employees,
> employee benefit plans, employee benefit plan fiduciaries, and agents . . .
> including, but not limited to, [V&J United], [V&J National], and Pizza Hut
> of America, LLC, or (b) that [V&J Employment] may have against
> [Plaintiff].

(Dkt. 10-1 at ¶ 1).  The Agreement further provides:

> [w]ithout limitation, such claims include any claims concerning application
> for employment, wages, expense reimbursement, compensation, leaves of
> absence, meal or rest breaks, employment (including, but not limited to,
> any claims concerning harassment, discrimination, or retaliation),
> termination of employment, conversion, breach of contract or covenant
> (express or implied), or breach of fiduciary duty; any tort claims; any
> common law claims; any statutory claims; any equitable claims; and/or any
> claims for declaratory relief.

(*Id.* at ¶ 2).  While Plaintiff does not mention the Agreement in his complaint, Defendants

filed a counterclaim seeking an order declaring that Plaintiff must resolve his claims

through arbitration, and also seeking an order from this Court (not the arbitrator) that

Plaintiff is prevented from proceeding with a class/collective action due to the class

action waiver in the Agreement. (*See* Dkt. 10 at 19).

- 3 -

Plaintiff's counsel has indicated that he was unaware of the existence of the Agreement at the commencement of this action. Upon learning of the Agreement, Plaintiff's counsel filed an NLRB "Charge Against Employer" complaint (the "Charge") on or about September 1, 2016, claiming that Defendants had interfered with Plaintiff's rights under Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 ("NLRA"), by including a class action waiver in the Agreement and attempting to enforce it. (Dkt. 15-5). The NLRB began an investigation into the basis of the Charge on September 2, 2016, (Dkt. 15-6), but the investigation has been stayed pending a forthcoming decision by the Supreme Court on the validity of class/collective action waivers in arbitration agreements under the NLRA.

On October 3, 2016, Plaintiff filed a motion to dismiss targeting Defendants' counterclaim, together with a motion to stay the proceeding pending an administrative investigation by the NLRB. (Dkt. 15). Specifically, Plaintiff argued that Defendants' request for declaratory relief was barred by the Agreement, which removed subject matter jurisdiction from this Court for any claims for declaratory relief and placed it before the arbitrator. (Dkt. 15-7 at 5-7). Defendants opposed Plaintiff's motions. (Dkt. 22).

On October 4, 2016, Defendants filed a motion to compel individual arbitration, stay this action, and strike all class/collective claims from the complaint. (Dkt. 17). Specifically, Defendants contended that Plaintiff's FLSA, NYLL, and common law claims must be arbitrated or litigated through arbitration according to the terms of the Agreement, that this action should be stayed pending the resolution of arbitration, and

that Plaintiff's class action allegations should be struck from the complaint due to the valid and enforceable class action waiver in the Agreement. (Dkt. 18 at 7-10). Plaintiff opposed this motion. (Dkt. 24).

On October 25, 2016, Plaintiff filed a motion to voluntarily dismiss this action pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Dkt. 23-1). Plaintiff indicated that he wished "to vindicate his rights through the NLRB and arbitration." (*Id.* at 10). Defendants opposed this motion claiming that Plaintiff was attempting to circumvent a judicial ruling on the validity and enforceability of the class action waiver. (Dkt. 36 at 4-5).

On or about December 30, 2016, Plaintiff filed a class action arbitration demand (the "Demand") seeking to initiate arbitration proceedings before the American Arbitration Association ("AAA"). (Dkt. 41-2; *see* Dkt. 41-1 at ¶ 4). Plaintiff named Defendants and V&J Employment as the arbitration respondents ("Respondents"), and made substantially similar allegations and requests for relief as set forth in the complaint. On December 30, 2016, Plaintiff's counsel emailed a copy of the Demand to Defendants' counsel. (Dkt. 41-1 at ¶ 5).

On January 9, 2017, the AAA sent correspondence to Plaintiff and V&J Holding, indicating that the Demand had been filed and requesting submission of the Agreement. (Dkt. 41-3). On January 12, 2017, the AAA sent another letter to the same addresses, indicating that it had received the Agreement and requesting that Plaintiff and Respondents submit the required filing fees of $200, and $1,500, respectively, by January 23, 2017. (Dkt. 41-4). On January 23, 2017, a third letter was sent, indicating that the

AAA had received Plaintiff's filing fee, but that Respondents' filing fee had yet to be paid. (Dkt. 41-5). Payment was requested for February 7, 2017. (*Id.*). The AAA subsequently sent three additional letters, on February 8, 2017, February 27, 2017, and March 30, 2017, indicating that Respondents had yet to pay the requisite filing fee. (Dkt. 41-6; Dkt. 41-7; Dkt. 41-8).

On April 7, 2017, the AAA sent a final correspondence indicating that it had administratively terminated the proceeding due to Respondents' failure to submit the filing fee, and that the AAA would "decline to administer any future employment matter involving" Respondents. (Dkt. 41-9).[1]   On the same day, Plaintiff filed a third motion, which sought leave to file a supplemental declaration and sought to withdraw his motion for voluntary dismissal. (Dkt. 41). On April 11, 2017, the Court granted Plaintiff's request to withdraw his motion for voluntary dismissal. (Dkt. 42). Plaintiff's counsel submits his supplemental declaration together with the AAA correspondences to argue that Defendants' failure to participate in the AAA proceeding prior to the date of its administrative termination amounted to a waiver of Defendants' right to compel arbitration and a breach of the Agreement's terms. (Dkt. 41-10 at 7-9). Defendants have submitted papers in response to the supplemental affidavit. (Dkt. 47).

On August 14, 2017, the Court held oral argument on the pending motions. (Dkt. 53). Counsel for Plaintiff clarified Plaintiff's position, arguing that Defendants' waiver

---

[1]   Defendants submitted the requisite filing fee three days after the AAA administratively terminated the proceeding. (Dkt. 47-3). The AAA has notified the parties of its receipt of payment, and has offered to reopen the proceeding upon Plaintiff's consent. (Dkt. 47-4).

of the right to arbitrate is, in essence, dispositive of the remaining issues pending before the Court. In other words, Plaintiff claims that Defendants' waiver not only requires that this Court deny Defendants' motion to compel and motion to strike, but it also moots Defendants' counterclaim because Defendants can no longer enforce the Agreement. Counsel for Defendants reasserted Defendants' opposition on the merits to Plaintiff's waiver argument, and opposed the notion that the counterclaim should be dismissed if the Court determines that Defendants waived their right to arbitrate. Specifically, counsel argued that the counterclaim sought a declaration regarding the appropriate interpretation of the terms of the Agreement—and did not seek to enforce it—and that if found valid the class action waiver would not only apply to arbitration proceedings, but to litigation as well.

## DISCUSSION

## I.   LEGAL PRINCIPLES

### A.   Determining Arbitrability

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *See* Fed. R. Civ. P. 12(b)(1). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Robinson v. Allstate*, 584 F. Supp. 2d 617, 619 (W.D.N.Y. 2008), *aff'd sub nom. Robinson v. Allstate Ins. Co.*, 508 F. App'x 7 (2d Cir. 2013). "A plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

"The [Federal Arbitration Act ('FAA')] was enacted in 1925 in response to widespread judicial hostility to arbitration agreements[,] . . . [and reflects] a 'liberal federal policy favoring arbitration. . . .'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation and citation omitted). "[T]he question of arbitrability . . . is undeniably an issue for judicial determination.   Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649. "Courts frequently apply the FAA to determine whether an underlying dispute is arbitrable and to enforce arbitration agreements." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, No. 13 Civ 6073 (PKC), 2013 WL 6171315, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 776 F.3d 126 (2d Cir. 2015).

> To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry.  First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the

- 8 -

claim alleged implicates issues of contract construction or the parties' rights
and obligations under it.

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d

Cir. 2001) (quotations and citations omitted).

## B.   Choice of Law

"Courts in diversity cases generally refer to state law in defining . . . ordinary

principles of contract and agency." *Horizon Plastics, Inc. v. Constance*, No. 00 Civ 6458

(RCC), 2002 WL 398668, at *3 (S.D.N.Y. Mar. 13, 2002). This principle applies with

equal force when the district court sits in supplemental jurisdiction. *See Gravatt v. City

of N.Y.*, 54 F. Supp. 2d 233, 233-34 (S.D.N.Y. 1999) ("[F]ederal courts sitting in diversity

and/or pendent jurisdiction apply state substantive law and federal procedural law.").

"Where, as here, the court exercises supplemental jurisdiction over the parties'

state law claims[,] . . . the court applies New York choice of law rules." *D'Amato v. Five

Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015).  The arbitration

agreement does not include a choice of law provision; rather, the agreement provides

only that it is governed by the FAA. (Dkt. 10-1 at ¶ 3). "Where there is no applicable

choice of law provision, courts in New York apply a 'center of gravity' approach to

determine the governing law in contract cases." *Mumin v. Uber Techs., Inc.*, No. 15 Civ

6143 (NGG) (JO), 2017 WL 934703, at *8 (E.D.N.Y. Mar. 8, 2017), *reconsideration

denied sub nom. Ortega v. Uber Techs. Inc.*, No. 15 Civ 7387 (NGG) (JO), 2017 WL

1737636 (E.D.N.Y. May 2, 2017). "Under this approach, courts may consider a spectrum

of significant contacts, including the place of contracting, the places of negotiation and

performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). "'[T]he traditional choice of law factors'—the places of contracting and performance—are 'given heavy weight in [this] analysis.'" *Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 261 (2d Cir.) (quoting *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226 (1993)), *certified question accepted*, 98 N.Y.2d 726 (2002), *and certified question answered*, 99 N.Y.2d 476 (2003). The parties have not submitted any argument on this point, but both parties have submitted memoranda of law that brief New York State case law and appear to assume that New York law applies. (Dkt. 24 at 9; Dkt. 32 at 7-9; Dkt. 33 at 5, 11; Dkt. 47 at 11); *see Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." (quotations and citation omitted)).

   In addition, the record before the Court supports a finding that New York law applies. Plaintiff has commenced a putative class action to recover lost wages on behalf of all delivery truck drivers who were employed by Defendants and were similarly situated to himself. (Dkt. 1). Plaintiff has provided no additional indication as to where these class members may be domiciled beyond his allegation that over one thousand class members are considered "New York delivery drivers." (*See id.* at ¶ 4); *see generally Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (holding that the court could presume that at least one class member was domiciled in New York for purposes of minimal diversity where the complaint "stated that there were 'thousands' of 'New York

customers' who were members of the class"). Plaintiff has also alleged that he is an "adult resident" of Rochester, New York, and that he was a pizza delivery driver for Defendants in Gates, New York. (Dkt. 1 at ¶ 10). Defendants have admitted that V&J United and V&J National have their "headquarters" in Rochester, New York, (*id.* at ¶ 14), but also assert that V&J Holding has its principal place of business in Wisconsin. (*Id.* at 16). Plaintiff also alleges that Defendants operate Pizza Hut restaurants in New York and Massachusetts (Dkt. 1 at ¶ 11), but suggests no other connection to Massachusetts and names no other state in which any potential class member might have operated a delivery truck. Although there is only a minimal understanding of the transactional contacts involved in this case, the Court finds that the majority of what is known or undisputed suggests that New York is the "center of gravity" in this instance. Therefore, the Court will apply New York substantive law in construing the Agreement. *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991).

## II.   HAVE DEFENDANTS WAIVED THE RIGHT TO ARBITRATE?

The Court notes the unusual posture of this case. Indeed, the parties' respective positions regarding the necessity for arbitration appear to have flipped—and then flipped again. At the time Plaintiff commenced this action Plaintiff's counsel was unaware of the Agreement and only later filed the Demand with the AAA on December 30, 2016. (Dkt. 41-1 at ¶ 4). Defendants sought to require arbitration through their counterclaim, and Plaintiff filed a motion to dismiss the counterclaim for lack of subject matter jurisdiction. (Dkt. 15). On October 4, 2016, Defendants filed a motion to compel arbitration and a

motion to strike all class/collective action allegations in the complaint. (Dkt. 17). After Defendants did not respond to the AAA's correspondence requesting the payment of the administrative filing fee, (Dkt. 41-5; Dkt. 41-6; Dkt. 41-7; Dkt. 41-8; Dkt. 41-9), Plaintiff moved to supplement the record, arguing that Defendants had breached the agreement and waived any right to force Plaintiff to arbitrate his claims (Dkt. 41-10 at 7-9; Dkt. 49 at 6-14). At oral argument, Plaintiff retracted from his initial position that this Court did not have subject matter jurisdiction to determine arbitrability, and focused his argument on Defendants' purported waiver of the right to arbitrate. In other words, Plaintiff takes the position that his breach/waiver argument is dispositive, and a ruling in his favor on that issue would moot all other issues pending before this Court. Defendants contest Plaintiff's argument that they have waived the right to arbitrate.

To untangle the competing arguments of the parties, the Court turns first to whether Defendants are bound by the Agreement as non-signatories.

## A.    Defendants Are Bound by the Agreement as Non-Signatories

The Agreement is between Plaintiff and V&J Employment—Defendants are not signatories to the Agreement. "[J]ust because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005); *see The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012) (holding that evidence of a "clear and unmistakable" "intent to have an arbitrator determine its jurisdiction with regard to disputes" between the parties to the agreement did not evince a similar intent "with respect to any dispute raised by a *non-party*" (emphasis in original)).

"In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement." *Contec Corp.*, 398 F.3d at 209.

Although Defendants are not signatories to the Agreement, "non-signatories to an arbitration agreement may . . . be bound according to 'ordinary principles of contract and agency.'" *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (quoting *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980)). In particular, the Second Circuit "'has recognized only limited theories upon which [it] is willing to enforce an arbitration agreement against a non-signatory.'" *Masefield AG v. Colonial Oil Indus., Inc.*, No. 05 Civ 2231 (PKL), 2005 WL 911770, at *3 (S.D.N.Y. Apr. 18, 2005) (quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)). "These principles include '(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.'" *Id.* (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Plaintiff claims that Defendants are bound by the Agreement under the latter three theories. (Dkt. 33 at 6).

### 1. Agency Theory

Plaintiff first argues that V&J Employment acted as an "agent" on behalf of Defendants. (Dkt. 33 at 6). Plaintiff reasons that this is so because Defendants "own[ed] and operat[ed] the Pizza Hut restaurants where delivery drivers such as Plaintiff work[ed], and [Defendants] receive[d] the full benefit[] of the drivers' employment relationship." (*Id.*). Furthermore, Plaintiff contends that V&J Employment acted with

- 13 -

either the "full and/or apparent authority of Defendants[ when it] signed the [Agreement] for their benefit." (*Id.*).

"The Second Circuit has cautioned that 'conclusory allegations of a general agency relationship between a signatory and non-signatory do not suffice to compel . . . unwilling non-signatories to arbitrate under that theory.'" *Masefield AG*, 2005 WL 911770, at *5 (quoting *Alco Int'l, E.C. v. Merrill Lynch & Co.*, 98 F. App'x 44, 46-47 (2d Cir. 2004)). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Merrill Lynch Inv. Managers*, 337 F.3d at 130 (quotations and citation omitted); *Faith Assembly v. Titledge of N.Y. Abstract, LLC*, 106 A.D.3d 47, 58 (2d Dep't 2013). "Essential to the agency relationship is the notion that the agent acts subject to the principal's direction and control." *Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 301 (S.D.N.Y. 2005); *see Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (2d Dep't 1993) ("The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority.").

Plaintiff's arguments amount to mere speculation. Plaintiff fails to demonstrate that a fiduciary relationship existed between Defendants and V&J Employment, or that V&J Employment acted pursuant to Defendants' direction or control. *Ayco Co., L.P. v. Frisch*, No. 11 Civ 580 (LEK) (DRH), 2012 WL 42134, at *7 (N.D.N.Y. Jan. 9, 2012). "A *full showing* of agency supported by an accepted theory of agency or contract law is required, and generalized allegations of affiliation are insufficient." *Masefield AG*, 2005

- 14 -

WL 911770, at *5 (emphasis added). "Anything short of requiring a *full* showing of some accepted theory under agency or contract law imperils a vast number of parent corporations." *Thomson-CSF, S.A.*, 64 F.3d at 780 (emphasis in original). Similarly, Plaintiff does not demonstrate that V&J Employment was clothed in apparent authority, which, under New York law, requires a showing that Plaintiff reasonably relied upon some misrepresentation of authority by V&J Employment. *See, e.g., Ayco Co., L.P. v. Becker*, No. 10 Civ 0834 (GTS) (RFT), 2011 WL 3651027, at *8 (N.D.N.Y. Aug. 18, 2011); *Flame Cut Steel Prod. Co. v. Performance Foams & Coatings, Inc.*, 46 F. Supp. 2d 222, 228-29 (E.D.N.Y. 1999).

### 2. Veil Piercing/Alter Ego Theory

Plaintiff next contends that Defendants should be required to arbitrate their counterclaim because they are the "alter egos" of the signatory V&J Employment. (Dkt. 33 at 6-7). Specifically, Plaintiff argues that Defendants share common shareholders and that V&J Employment maintains the same headquarters and contact information as V&J Holding. (*Id.* at 7). Common ownership does not alone justifying piercing the corporate veil. *See Thomson-CSF, S.A.*, 64 F.3d at 778 (holding that the veil piercing/alter ego theory did not bind the non-signatory where there was common ownership between the corporations as there was no showing of "an abandonment of the corporate structure," "an absence of corporate formalities" or "an intermingling of corporate finances and directorship"); *Bagel Bros. Maple v. Ohio Farmers, Inc.*, 279 B.R. 55, 65 (W.D.N.Y. 2002) ("Indeed, even the fact that corporations have identical controlling stockholders, officers, and directors does not, by itself, warrant disregard of the separate corporate

entities." (quotations and citations omitted)). The New York Court of Appeals has held that where a corporation is not a signatory to an agreement containing an arbitration clause, but is merely related to another corporation that has signed it, "absent a showing of abuse of the corporate form, the nonsignatory corporation cannot be compelled to arbitrate" under the veil piercing/alter ego theory. *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 337 (1998). "Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance." *Id.* at 339. Since Plaintiff has not made any showing that there has been an abuse of corporate form or other fraudulent conduct, Plaintiff cannot carry the "heavy burden" required to apply the veil piercing/alter ego theory. *See Id.*

### 3. Estoppel Theory

The Court is persuaded by Plaintiff's argument in support of applying the estoppel theory. Plaintiff contends that Defendants are estopped from avoiding the Agreement because they received a direct benefit from the Agreement. (Dkt. 33 at 7). The specific benefit described by Plaintiff is that Defendants received the right to enforce the Agreement, and have, in fact, sought to enforce their rights to arbitrate. (*See id.*).

"Under the estoppel theory, a company 'knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement.'" *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (quoting *Thomson-CSF, S.A.*, 64 F.3d at 778). "Guided by '[o]rdinary principles of contract and agency,' [the Second Circuit has] concluded that where a company 'knowingly accepted the benefits' of an agreement with

an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause." *Id.* (quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)). These benefits must be "direct benefits" arising from the contract itself. *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999). "[A] benefit will be deemed indirect where 'the nonsignatory exploits the contractual relation of parties to an agreement but does not exploit (and thereby assume) the agreement itself.'" *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 187 (E.D.N.Y. 2006) (quoting *MAG Portfolio Consultant, GMBH*, 268 F.3d at 61); *see also Servaas Inc. v. Republic of Iraq*, 686 F. Supp. 2d 346, 355 (S.D.N.Y. 2010) ("Where a party derived a direct benefit from the contract containing the arbitration provision, or so participated in the [arbitration] proceeding, it will be estopped from "raising any question of being a nonsignatory to the agreement." (quotations and citations omitted)), *aff'd,* 653 F. App'x 22 (2d Cir. 2011), *as amended* (Feb. 16, 2011).

Here, Defendants claim to be "third-party beneficiaries" of the Agreement, and as such they are able to enforce the Agreement against Plaintiff. (Dkt. 18 at 8-10). Indeed, V&J United and V&J National are both explicitly listed as "third-party beneficiaries of th[e] Agreement and have the right to enforce th[e] Agreement." (Dkt. 10-1 at ¶ 8). In addition, V&J Employment's "affiliates" are also expressly listed as "third-party beneficiaries of th[e] Agreement." (*Id.*). Certainly, V&J Holding's common ownership with V&J Employment renders V&J Holding an "affiliate" third-party beneficiary. (*See* Dkt. 17-5); *see also Bakon v. Rushmore Serv. Ctr., LLC*, No. 16 Civ 6137, 2017 WL

2414639, at *3 (E.D.N.Y. June 2, 2017) ("That Premier, a signatory to the Agreement, 'authorized or retained' Rushmore to collect on Bakon's account makes Rushmore, at minimum, an 'affiliate' of Premier expressly contemplated by the Agreement. Rushmore, as a member of this class, was intended as a third party beneficiary who may enforce the Agreement.").

"[A] third-party beneficiary may be estopped from denying its duty to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *Ogden Power Dev.-Cayman, Inc. v. PMR Co.*, No. 14 Civ 8169 (PKC), 2015 WL 2414581, at *9 (S.D.N.Y. May 21, 2015), *appeal withdrawn* (Oct. 6, 2015). Defendants have expressly received third-party beneficiary status in the Agreement through their receipt of the right to force arbitration of any claim covered by the Agreement and have sought to enforce this right against Plaintiff in this case. *See MAG Portfolio Consultant, GMBH*, 268 F.3d at 61 (stating that direct benefits must be those that "flow[] directly from the agreement"). Defendants cannot use the Agreement as both a sword to compel arbitration of Plaintiff's claims, and a shield to deflect the necessity of arbitrating their counterclaim. To permit such a result would run counter to the federal policy favoring arbitration "as a means to reduce 'the costliness and delays of litigation.'" *Campaniello Imports, Ltd. v. Sapriti Italia S.p.A.*, 117 F.3d 665 (2d Cir. 1997) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).

For these reasons, Defendants are estopped from avoiding the Agreement as non-signatories. The Court now turns to whether Defendants have forfeited the right to force Plaintiff to arbitrate his claims.

**B.     Defendants' Breach of the Agreement**

**1.     Motion to File a Supplemental Declaration**

Plaintiff contends that he should be granted leave to supplement the record in order to show that Defendants have waived or defaulted upon their right to enforce the Agreement. (Dkt. 41).   Where "there is no evidence of prejudice to [Defendants] or bad faith on [Plaintiff's] part, and the parties will be best served by the Court's deciding the . . . issue presented to it on the most complete factual basis possible," supplemental evidence should be allowed. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco P.L.C.*, No. 03 Civ 0200 (GEL), 2003 WL 1618534, at *1 (S.D.N.Y. Mar. 27, 2003).  The additional evidence submitted in Plaintiff's motion presents a Declaration by Plaintiff's counsel, the Demand, and the AAA correspondence sent before the arbitration proceeding was terminated.  There is no evidence that Plaintiff submits this evidence in bad faith, and, despite their objection to the merits of Plaintiff's contentions, Defendants submit no argument explaining why leave to file a supplemental declaration would cause them prejudice.  Since a more complete factual record of the arbitration proceeding and the AAA's communications would benefit the Court in resolving this matter, and as a number of these documents were drafted subsequent to the parties' final submissions on their previous motions, Plaintiff's motion for leave to file a supplemental declaration is granted.  The Court will now turn to the merits of Plaintiff's waiver argument.

### 2.   Defendants Breached the Agreement by Failing to Participate in the Arbitration Proceedings

Defendants' response (or lack thereof) to the notifications from the AAA must be considered in context.  Specifically, at the time that Defendants were receiving notices from the AAA (and not responding to those notices), they were actively litigating this case and seeking to compel Plaintiff to arbitrate his disputes.

> "A refusal by [a party] to arbitrate upon demand duly made by the other side constitutes . . . a waiver." *Nagy v. Arcas Brass & Iron Co.*, 242 N.Y. 97, 98, 150 N.E. 614 (1926) (per curiam).  However, "[c]rucial to the establishment of waiver in the arbitration context is the presence of conduct by the party seeking to compel arbitration which reflects a positive and unequivocal election to ignore his or her arbitration rights." *Great Northern Assocs., Inc. v. Continental Cas. Co.*, 192 A.D.2d 976, 596 N.Y.S.2d 938, 941 (3d Dep't 1993).

*Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008).  "'[T]here is a strong presumption in favor of arbitration[, and] waiver of the right to arbitration is not to be lightly inferred.'" *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002) (quoting *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001)).  "The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993).

In making this argument Plaintiff relies heavily upon *Nadeau v. Equity Residential Props. Mgmt. Corp.*, No. 16 Civ 7986 (VB), 2017 WL 1842686 (S.D.N.Y. May 5, 2017). In *Nadeau*, the plaintiff filed a demand to arbitrate with the AAA pursuant to the arbitration agreement that existed between the plaintiff and the defendant. *Id.* at *2.  The plaintiff paid her filing fee, but the defendant did not pay its filing fee, even after the

defendant's legal department discussed the demand with the plaintiff on several occasions. *Id.* Within about six weeks after the AAA first informed the parties that it had received the plaintiff's payment but not the defendant's, the AAA administratively terminated the case and the plaintiff filed a class action suit against the defendant. *Id.* Although the AAA subsequently reopened the arbitration demand upon the defendant's late payment, *Nadeau* found that the defendant had materially breached the arbitration agreement by failing to timely pay the arbitration fee before the AAA closed the case, and, under New York contract law, was unable to now enforce it against the plaintiff. *See id.* at *3; *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir.) ("Our holding is consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement."), *cert. denied*, 136 S. Ct. 373 (2015).

In doing so, *Nadeau* cited the Ninth Circuit's opinion in *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), where the court also concluded that a refusal to arbitrate amounted to a material breach of the arbitration agreement, which prevented the defendant from compelling arbitration. *Id.* at 1010-1012. In *Brown*, the defendant believed that the plaintiff's arbitration charge did not present an arbitrable claim and simply refused to participate. *Id.* at 1010. The court stated that if the defendant "believed [the plaintiff]'s claim was meritless, its proper course of action was to make that argument in arbitration" and that a refusal to participate at all amounted to a breach of the arbitration agreement, "depriv[ing the defendant] of the right to enforce that

agreement." *Id.* Furthermore, *Nadeau* also determined that the "plaintiff['s] fail[ure] to sign and date the [arbitration d]emand," and her failure "to check a box regarding whether her claims involved statutorily protected rights," amounted to mere "technical deficiencies" in the arbitration demand that did not nullify the initiation of arbitration. *Nadeau*, 2017 WL 1842686, at *3.

Defendants respond to Plaintiff's contention by asserting various deficiencies in the Demand and its service upon the proper parties. Defendants claim that these reasons demonstrate that it neither waived its right to enforce the Agreement nor did it breach the provisions of the Agreement. (Dkt. 47 at 4-11). The Court disagrees with Defendants and concurs with the rationale in *Nadeau* that mere technical deficiencies in the Demand or its service does not invalidate an otherwise proper initiation of arbitration— particularly in the context of this case where Defendants were, at the same time, using the resources of this Court to attempt to compel Plaintiff to arbitrate.

Defendants contend that they had no "legal obligation to pay the arbitration filing fees" because the Agreement requires only that V&J Employment pay the administrative costs. (Dkt. 47 at 9). It is true that V&J Employment is obligated to pay a portion of the arbitration fees upon Plaintiff's filing of an arbitration demand. (Dkt. 10-1 at ¶ 5). Nonetheless, the Agreement also expressly requires that Plaintiff proceed to arbitration against V&J United, V&J National, and any of V&J Employment's affiliates, (Dkt. 10-1 at ¶ 1), and Defendants concede that they did, in fact, eventually pay the filing fee, even if only "to avoid further confusion by the AAA." (Dkt. 47 at 11 n.5).

Defendants appear to claim that V&J Employment did not pay the fee at an earlier date because the AAA "never sent a letter demanding payment to V & J Employment," and that this was likely caused by Plaintiff's failure to provide "all parties' contact information in the arbitration submission." (*Id.* at 9). Defendants further claim that, as a result, "most of the [AAA] letters were sent only to V & J Holdings." (*Id.*). The Court views this argument as disingenuous. Although there is not enough evidence to substantiate Plaintiff's contention that Defendants and V&J Employment are corporate "alter egos," the evidence indicates that V&J Holding is owned by the same two shareholders that own V&J Employment. (Dkt. 17-5). Additionally, V&J Holding and V&J Employment maintain the same principal office address. (Dkt. 50-1 at 2; Dkt. 50-2 at 2). The AAA sent several mailings and faxes to this address. (Dkt. 41-3; Dkt. 41-4; Dkt. 41-5; Dkt. 41-6; Dkt. 41-7; Dkt. 41-8). The fact that none of these correspondences were noticed to V&J Employment does not excuse their refusal to participate in the arbitration.[2]

Defendants next argue that they were excused from paying the arbitration filing fee pursuant to the AAA Rules. (Dkt. 47 at 9). Specifically, Defendants contend that Plaintiff failed to "include the contact information for the parties" and failed to provide the requisite notice to Defendants. (*Id.* at 10). The AAA Rules provide that in order to initiate an arbitration proceeding, the arbitration demand "shall set forth the names, addresses, and telephone numbers of the parties . . . [and the initiating party must also]

---

[2] Notably, the AAA correspondence sent to the parties upon Defendants' payment of the filing fee still lists the same mailing address for V&J Holding. (Dkt. 47-4).

[s]imultaneously provide a copy of the Demand to the other party. . . ." AAA Rules R. 4(b)(i). The AAA Rules further provide that "[t]he form of any filing in these rules shall not be subject to technical pleading requirements." *Id.* R. 4(c). Although Plaintiff's arbitration submission appears to lack the parties' addresses or telephone numbers, the letters sent by the AAA all reveal that the appropriate address for V&J Employment was utilized in sending out these correspondences. In other words, since V&J Holding and V&J Employment share the same principal office address, Defendants' argument that notice was not actually rendered is unpersuasive.[3] As such, the Court agrees with Plaintiff that the ultimate error of naming V&J Holding as the recipient amounted to a "technical deficiency" in the AAA correspondence that will not excuse Defendants' participation in the arbitration proceeding. *See generally Nadeau*, 2017 WL 1842686, at *3.

Defendants also claim that they were excused by Plaintiff's noncompliance with the service requirements set forth in the AAA Rules. (Dkt. 47 at 10). These requirements provide that

> [a]ny papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules . . . may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

---

[3]    At oral argument, counsel for Defendants indicated that Defendants do not take the position that V&J Employment was unaware of the arbitration proceedings.

AAA Rules R. 38(a). Additionally, "overnight delivery or [fax]" may be used "to give notices required by these rules," and "[w]here all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication." *Id.* R. 38(b). Plaintiff's counsel affirmed that he emailed the Demand to counsel for Defendants. (Dkt. 41-1 at ¶ 5). Service upon the parties' representative is permitted by the AAA Rules, and thus, service of a demand for arbitration upon counsel for the respondent parties is appropriate. *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 982 (2d Cir. 1996).

Defendants are correct that there is no evidence that the parties agreed to notice by email. The AAA Rules do not provide a remedy or penalty for noncompliance with this rule. Nonetheless, Defendants concede that they paid the filing fee two business days after the final notice was issued.[4] There was no change in the method of communication used by the AAA prior to the final correspondence that would explain Defendants' renewed desire to participate post-termination, and Defendants do not argue that they never received the AAA correspondences until Plaintiff filed his motion for leave to supplement the record. Instead, it appears that Defendants rely on the fact that none of the AAA mailings explicitly demanded payment from V&J Employment. Under these

---

[4]      The Court notes that, in their motion papers, Defendants claim that their filing payment was made only "two business days after the deadline set by AAA." (Dkt. 47 at 8). This is a gross misstatement of the facts. While Defendants' payment was made two business days after the *final* AAA correspondence terminated the case, this payment was made *two months* after the first deadline was set by the AAA for payment. (Dkt. 41-5 (requesting payment be submitted "on or before February 7, 2017")).

circumstances, it can hardly be said that Defendants suffered any real prejudice as a result of the defects in service.

Rule 36 of the AAA Rules states that "[a]ny party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object." This rule contemplates that the parties cooperate with the AAA's institution of arbitration proceedings, and must preserve their right to compliance with the AAA Rules by making a swift objection on the record. If a party could simply ignore AAA correspondence, rightly or wrongly, this act could very likely hamstring the FAA's objective of "encourage[ing] swift and efficient dispute resolution." *See McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 346 (S.D.N.Y. 2002); *see also Brown*, 430 F.3d at 1010 (stating that the defendant was required to make its argument during the arbitration proceedings and could not simply refuse to participate).

Here, Defendants failed to make any objection to Plaintiff's Demand, its service, or any of the AAA mailings sent to V&J Holding's principal office. Instead, Defendants caused further delay by failing to respond to the AAA's letters before filing a late administrative fee under threat of exclusion from all future arbitration proceedings before the AAA. *See generally Roach v BM Motoring, LLC*, 228 N.J. 163, 155 A.3d 985 (2017) (holding that the refusal to advance filing fees constituted a material breach of the arbitration agreement and that "[h]ad there truly been a dispute regarding the proper forum, [the] defendants should have alerted [the] plaintiffs within a reasonable time"

- 26 -

instead of rendering no response).   Therefore, despite Plaintiff's failure to strictly adhere to the AAA notice requirements, Defendants cannot point to any prejudice arising from this procedural violation.

Defendants further argue that they were excused from paying the AAA's requested filing fee of $1,500 because this was $200 more than the amount proscribed by the terms in the Agreement.   (Dkt. 47 at 11; *see* Dkt. 10-1 at ¶ 5 (providing that V&J Employment "will pay that portion of the arbitration filing fee in excess of the similar court filing fee had [Plaintiff] gone to court").   Without opining on the appropriateness of the AAA's $1,500 fee request, the Court finds Defendant's argument unpersuasive.   The AAA Rules provide an explicit mechanism for objecting to the AAA's determination of administrative fees, and Defendants' non-responsiveness is, again, insufficient.   *See* AAA Rules, Costs of Arbitration (including AAA Administrative Fees) ("If a party disagrees with the AAA's [costs of arbitration] determination, the parties may bring the issue to the attention of the arbitrator for a final determination.").

Finally, despite Defendants' contention to the contrary, it cannot be said that Plaintiff has suffered no prejudice as a result of Defendants' actions.   Defendants argue that any breach of the Agreement was not material as little-to-no prejudice resulted from their purportedly "short delay" in paying the AAA filing fee.   (Dkt. 47 at 12-13).   The Court disagrees.   The two-month delay in payment after receipt of several AAA letters requesting participation "strongly suggests a deliberate strategy unilaterally designed to delay the arbitration proceedings." *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir. 2005).   Counsel for Defendants has indicated that Defendants do not argue that V&J

Employment failed to timely pay the filing fee because it was unaware of the arbitration proceedings. This provides further support for the inference that Defendants were likely more persuaded by the AAA's refusal to administer any and all future arbitration proceedings involving Defendants than a desire to fulfill their obligations under the Agreement.

Defendants attempt to distinguish the rationale in *Nadeau* and *Brown* on the basis that Plaintiff was not required to pursue litigation as a result of any breach committed by Defendants; rather, Plaintiff had already initiated this litigation. (Dkt. 47 at 13). In *Nadeau*, the court indicated that to find the defendant's breach of contract immaterial "would set up a perverse incentive scheme contrary to the FAA and common sense. . . ." *Nadeau*, 2017 WL 1842686, at *3 (quoting *Brown*, 430 F.3d at 1012).

> Employers  . . . would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings.

*Brown*, 430 F.3d at 1012. The Court finds this rationale applicable to the instant matter.

The Court acknowledges counsel's assertion that there was some internal confusion among Defendants' personnel in how to respond to the various AAA correspondence. Nonetheless, this does not eliminate the glaring absence of *any response* by Defendants after months of receiving the AAA letters. Defendants waited until their future arbitration privileges had been threatened before making any effort to comply with the AAA correspondence or even to communicate with the AAA. (Dkt. 41-9; Dkt. 47-4).

- 28 -

Now, having delayed Plaintiff's attempt to pursue arbitration, Defendants seek to once again delay the resolution of Plaintiff's claims by requiring him to return to the very arbitration proceedings that Defendants stalled to the point of termination. Meanwhile, Plaintiff has been required to amass additional litigation expenses in demonstrating Defendants' breach of the Agreement, and will have to expend further legal expenses in proceeding before the AAA. *See Tyco*, 422 F.3d at 46 (considering the costs of submitting a "doomed AAA demand for arbitration," of "filing its district court complaint," and of "defending against not one, but two, motions for compelled arbitration" as probative of prejudice).

The Ninth Circuit has determined that the failure to advance the arbitration filing fee amounted to a material breach of the arbitration agreement because, otherwise, "a party refusing to cooperate with arbitration [could] indefinitely postpone litigation." *Sink v. Aiden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003). In *Sink*, the Ninth Circuit determined that if "the sole remedy available to a party prejudiced by default" on the payment of the arbitration filing fee was "a court order compelling a return to arbitration," then "[t]he same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the aggrieved party's attempts to resolve its claims." *Id.* The Court recognizes that Defendants have, in fact, paid the AAA filing requirement. (Dkt. 47-4). However, there is no assurance that Defendants will not attempt to incur further delay in any future arbitration proceedings that will eventually lead the parties back to court. As noted by the First Circuit in *Tyco*, "[e]ven as

- 29 -

justice delayed may amount to justice denied, so it is with arbitration." *Tyco*, 422 F.3d at 46.

Furthermore, under New York law, "[a] breach is material when it 'substantially defeats the purpose of th[e] contract.'" *Nadeau*, 2017 WL 1842686, at *3 (quoting *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)); *see Smolev v. Carole Hochman Design Grp., Inc.*, 79 A.D.3d 540, 541 (1st Dep't 2010) (holding that there were questions of fact as to whether the contracts had been breached "and, if so, whether the breaches were material under these agreements, i.e., were 'so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract'" (quoting *Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*, 199 N.Y. 268, 284 [1910])). "[T]he purpose of an arbitration agreement is to avoid the delay and costs which may accompany a trial." *Pan Atl. Grp., Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 640 (S.D.N.Y. 1995); *see Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960) (stating that "the ostensible purpose for resort to arbitration" is the "avoidance of litigation"); *Weinrott v. Carp*, 32 N.Y.2d 190, 198 (1973) (stating that the two "primary virtues" of arbitration are "speed and finality").

Indeed, the Agreement's introductory clause provides that Plaintiff and V&J Employment entered the Agreement "[b]ecause of the delay and expense of the court systems." (Dkt. 10-1 at ¶ 1). The record demonstrates that Defendants' dilatory tactics have resulted in protracted litigation completely at odds with the laudatory objectives of the FAA, *see, e.g.*, *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (stating that Congress intended the arbitration process to remedy the costs and delays associated with

litigation), and which substantially defeated the purpose of the Agreement. Defendants'
refusal to participate in arbitration has prejudiced Plaintiff and has resulted in a material
breach of the Agreement. As a result of Defendants' inaction, they have lost their right to
compel Plaintiff to arbitrate his claims. *See Nadeau*, 2017 WL 1842686, at *3 ("Under
New York law, when a party to a contract materially breaches that contract, it cannot then
enforce that contract against a non-breaching party.") (citing *Lavigne*, 114 F.3d at 387).

Therefore, Plaintiff's motion for leave to file the supplemental declaration
detailing the basis for Defendants' waiver of the right to arbitrate (Dkt. 41) is
**GRANTED**, and Defendants' motion to compel arbitration and stay the action pending
arbitration (Dkt. 17) is **DENIED** on the ground that Defendants have waived the right to
arbitrate. At oral argument, Plaintiff's counsel articulated the view that if the Court
agreed that Defendants had waived the right to arbitrate, their counterclaim request for an
order declaring that Plaintiff must arbitrate his claims would be rendered moot. The
Court does not believe that the counterclaim is moot, but rather it is subject to dismissal
to the extent it seeks a declaration that Plaintiff must arbitrate, on the ground that
Defendants have waived the right to arbitrate.[5]   However, Plaintiff's motion to dismiss

---

[5]      Counsel for Defendants argued that whether or not Defendants had breached the
Agreement—and were barred from forcing Plaintiff to arbitration—did not affect the
validity of the counterclaim because the counterclaim sought a declaration interpreting
the terms of the Agreement and did not seek to enforce the Agreement against Plaintiff.
The Court disagrees with this argument to the extent the counterclaim seeks a declaration
concerning the need for arbitration. If Defendants breached the Agreement, then such a
declaratory judgment would be rendered useless as Defendants would be unable to
enforce it. *See generally Daebo Int'l Shipping Co., Ltd. v. Ams. Bulk Transp. Ltd.*, No.
12 Civ. 7960 (PAE), 2013 WL 2149595, at *4 (S.D.N.Y. May 17, 2013) (dismissing
complaint requesting declaratory judgment that several entities were the corporate alter

the counterclaim (Dkt. 15) is based on a lack of subject matter jurisdiction argument, which is not the appropriate basis for dismissing the counterclaim to the extent it seeks to compel arbitration. Therefore, Plaintiff's motion to dismiss the counterclaim to the extent it seeks to compel arbitration based on a lack of subject matter jurisdiction argument (Dkt. 15) is **DENIED**.

## III.   ENFORCEABILITY OF CLASS ACTION WAIVER

Having determined that Defendants have forfeited their right to force Plaintiff to arbitrate his claims, the Court must still determine the enforceability of the class action waiver contained in the Agreement. Plaintiff has filed a Charge with the NLRB and seeks to stay the action (Dkt. 15) pending a determination by the NLRB. The NLRB has stayed its investigation pending the Supreme Court's consideration of the validity of class/collective action waivers, in the consolidated cases of *Ernst & Young, LLP v. Morris*, 137 S. Ct. 809 (2017), *Epic Sys. Corp. v. Lewis*, 137 S. Ct. 809 (2017), and *NLRB v. Murphy Oil USA, Inc.*, 137 S. Ct. 809 (2017). Defendants seek to strike all class/collective actions from the complaint based on the Agreement's class action waiver, pursuant to its counterclaim seeking this relief. (Dkt. 17).[6]

---

egos in pursuit of the plaintiff's attempt to collect an arbitral award where such a declaration "may ultimately prove to be useless if [the plaintiff] cannot enforce the [a]ward against [the defendant]"); *Dombrovskis v. Esperdy*, 185 F. Supp. 478, 482 (S.D.N.Y. 1960) (refusing to entertain an application for declaratory judgment where the requested declaration would be "a useless thing" since it could not bind the nonparty).

[6]   As noted above, Plaintiff originally sought to dismiss the counterclaim for lack of subject matter jurisdiction on the ground that the issues at play in the counterclaim must be arbitrated (Dkt. 15), but that argument was essentially withdrawn by Plaintiff when it took the position that Defendants had waived the right to arbitrate.

The NLRB has concluded that "arbitration agreements that waive an employee's right to pursue legal claims in any judicial or arbitral forum on a collective action basis" are unenforceable; "[t]he circuit courts, however, are irreconcilably split on the question." *Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40, 42-43 (2d Cir. 2016), as corrected (Sept. 7, 2016), as corrected (Sept. 14, 2016). Although the Second Circuit "unquestionably rejected the NLRB's analysis," *id.* at 43; *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013), the Seventh and Ninth Circuits have held to the contrary, and the Supreme Court is set to resolve this circuit split.

As such, it would appear that the application of existing precedent leads to the conclusion that the class action waiver is valid and enforceable, and that Defendants' motion to strike the class/collective allegations from the complaint should be granted. *See D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 344 (D. Conn. 2011). Even so, in the interests of judicial economy, the Court chooses to defer entering judgment upon the validity and enforceability of this class action waiver because the Supreme Court has granted certiorari on three consolidated cases to directly address whether class action waivers in arbitration agreements violate the NLRA. *See Ernst & Young, LLP*, 137 S. Ct. 809; *Epic Sys. Corp.*, 137 S. Ct. 809; *Murphy Oil USA, Inc.*, 137 S. Ct. 809.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A court may properly exercise this power when a higher court is close to settling an important issue of law bearing on the action." *In re Literary Works in Elec. Databases*

*Copyright Litig.*, No. M–21–90 GBD, MDL 1379, 00 CIV 6049, 00 CIV 7376, 00 CIV 9411, 2001 WL 204212, at \*2 (S.D.N.Y. Mar. 1, 2001); *see, e.g., Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (remanding the case and directing the district court to stay the action pending the resolution of a pending Supreme Court case); *Jugomohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 WL 222186, at \*5 (S.D.N.Y. Feb. 26, 2000) ("Postponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy.").

Here, if the Supreme Court determines that class/collective action waivers are unenforceable, then this would be dispositive of Defendants' motion to strike. If the Supreme Court rules that such waivers are valid and enforceable—consistent with standing Second Circuit precedent—Plaintiff's putative class/collective action would necessarily be reduced to an action brought in his individual capacity, and the scope of any discovery and subsequent procedures would be significantly impacted. Since the Supreme Court's decision in the consolidated cases mentioned above will almost certainly address the validity of class action waivers in employment arbitration agreements under the NLRA, the Court will stay this action and the resolution of Defendants' motion to strike the class/collective allegations in the complaint until the Supreme Court has opined upon this issue.

Although the Court is granting a stay *sua sponte*, it denies Plaintiff's motion to stay pending the resolution of the NLRB's investigation. (Dkt. 15-7 at 11). In support of his requested stay, Plaintiff relies on *Int'l Org. of Masters, Mates & Pilots v. Trinidad*

*Corp.*, 803 F.2d 69 (2d Cir. 1986) where the Second Circuit stayed the matter pending the conclusion of an NLRB adjudication. *Id.* at 73-74. Nonetheless, the instant case is distinguishable because the complaint in *Trinidad Corp.* was to be definitively "resolve[d]" at a subsequent NLRB hearing. *Trinidad Corp.*, 803 F.2d at 74. Additionally, in *Trinidad Corp.*, the Second Circuit noted that the "same issues" were to be concluded at the NLRB hearing as were presented before the district court. *Id.* Here, the issue to be resolved before the NLRB is whether Defendants violated Plaintiff's rights under the NLRA by having him sign the Agreement containing a class/collective action waiver. (Dkt. 15-5).

As already stated, the Second Circuit has rejected the NLRB's position on class/collective action waivers, and thus, absent a new ruling by the Supreme Court in the consolidated cases named above, this Court would be obliged to ignore the NLRB's determination and follow standing Second Circuit precedent. Indeed, should the Supreme Court determine that a class/collective action waiver does not violate the NLRA, the NLRB would be required to follow this decree as well. Therefore, since the Court has stayed this action pending the resolution of the Supreme Court's forthcoming determination, Plaintiff's motion to stay this action pending the resolution of the NLRB investigation (Dkt. 15) is **DENIED**.

## CONCLUSION

For the foregoing reasons, (1) Plaintiff's motion for leave to file a supplemental declaration (Dkt. 41) is **GRANTED**; (2) Defendants' motion to compel arbitration and stay this action pending arbitration (Dkt. 17) is **DENIED**; (3) Plaintiff's motion to

dismiss based upon lack of subject matter jurisdiction (Dkt. 15) is **DENIED**; (4) Plaintiff's motion to stay this action pending resolution of the NLRB investigation (Dkt. 15) is **DENIED**; and (5) this action (along with Defendant's pending motion to strike (Dkt. 17)), is **STAYED** pending the resolution of the Supreme Court's forthcoming decision upon the validity and enforceability of class/collective action waivers in employment arbitration agreements.

      SO ORDERED.

                                       ELIZABETH A. WOLFORD
                                       United States District Judge

Dated:        August 30, 2017
                Rochester, New York